Beugan, J. (dissenting).
To say of Bruton v. United States (391 U. S. 123) that it is retroactive in effect and that it applies as well to the States as to the Federal Government (Roberts v. Russell, 392 U. S. 293) is essentially a matter of time and place of application.
It still must be seen what it applies to. Bruton dealt with a total exposure to the jury of a statement by one defendant which implicated another with no attempt at protecting the nonconfessing defendant except to tell the jury it could not consider the other defendant’s confession in appellant’s case. This used to be regarded as protection enough (Delli Paoli v. United States, 352 U. S. 232) but that case is now overruled.
*326 The decision in Bruton cannot reasonably be read as closing off all joint criminal trials in the United States where it happens that the confession of one defendant accuses another. It depends here on what safeguards are taken to protect the non-confessing defendant. As in most claims of legal error the question is whether there has actually been any harm done that defendant.
This scope of application seems clear from the Supreme Court’s own construction of Bruton in Roberts v. Russell (supra, p. 294). In extending the Bruton rule to the States the court quoted the general principle from Stovall v. Denno (388 U. S. 293) that there must be “ serious flaws ” in State trials. It evaluated the error in Bruton as touching on the basis of * ‘ fair hearing and trial ’ ’ within the definition of Linkletter v. Walker (381 U. S. 618).
The interdiction, as Bruton (supra, p. 135) noted, and as Roberts reiterated, was against “ powerfully incriminating •extrajudicial statements ” of a codefendant. (Cf. People v. Boone, 22 N Y 2d 476, 485.)
Here there were no such serious flaws as to warrant reversal. Efforts were made to redact written confessions so not to implicate nonconfessing defendants. Care was taken in limiting the references in oral confessions. No motion for separate trials had been made. Some references to statements implicating others seem almost inadvertent in the record and it is not easy to believe that these incidental references played any real role in this massive record (Gilbert v. California, 388 U. S. 263).
Some of the admissions implicating others were made to a witness while the conspiracy to kill was still in progress and may have been independently admissible. And substantially all of the material on which the court would now reverse went into the record without pertinent objection.
The decision in O’Connor v. Ohio (385 U. S. 92) holding-that an absence of objection to the argument of the prosecutor under then accepted State practice that an adverse inference could be drawn from the failure of defendant to testify would not defeat the Federal appeal is one expressly limited to the constitutional question there considered. It was a decision stated *327 to be applied “in these circumstances”. It did not abolish the adversary system in criminal trials in State courts.
The redactions were as complete, probably, as redactions ever can be. In the written confessions “ X ” was used and in the oral testimony of admissions “another boy” or “one of the boys ” was used. The cases in this court should not be read as condemning all redactions and this case does not compel the establishment of such a rule.
In dealing with the effect of confession of one defendant on another jointly tried the court has each time dealt with a specific problem. In People v. La Belle (18 N Y 2d 405), for example, it was over-redaction, i.e., ground for reversal was the elimination of exculpatory statements by the confessing defendant as being prejudicial to him.
In People v. Boone (22 N Y 2d 476, supra) not only did the court regard redaction to be impossible but a motion for severance had been made which the court regarded as the equivalent to an objection (p. 485). In People v. Burrelle (21 N Y 2d 265) the redaction by using “ X ” was held insufficient because of other and unmistakable criteria of identification of “ X ”. Nor is this a case where, as in People v. Vitagliano (15 N Y 2d 360), portions of a confession are “ easily severable ” (p. 364).
There are two instances which the majority regards as having prime significance in which oral admissions attributed to Hamm named other defendants. These two instances, must be seen in the context of a huge record to evaluate their significance.
They were almost casual and perhaps were inadvertent. Looking at the whole record it is not possible to believe they had any real effect and they should be disregarded as being harmless error (Gilbert v. California, 388 U. S. 263, supra).
One of the main law points on which reversal is placed is on the testimony of Barnes, a companion of defendants, not a police officer. He said he asked Thomas what had happened and Thomas said Felder “ had panicked ”. To this testimony Felder made no specific objection that it was prejudicial. He asked the court to instruct the jury that “ this is not binding in any way ” on Felder.
*328 The argument then between counsel was not over whether such an instruction should be given but as to when it should be given: “ This is not the proper time”, said the District Attorney. The ‘ ‘ overruled ’ ’ must be deemed to relate to the timeliness of the instruction.
As to the defendants other than Felder, who was not present when Bice spoke to Hamm, the statement of Bice accusing all defendants of the crime, and made not under custody but before arrest, is admissible as to all who were present.
It is true that the prosecutor in summation urged the jury to consider Hamm’s statement. But he did this by giving in narrative form what Hamm said had happened. The only objection in the record by the attorney for Baker is that “There is no such evidence ”, to which the District Attorney answered that it was ‘ ‘ in the evidence ’ ’. More than this is needed to save the point now urged.
The other main ground of error on which reversal is placed is the confession of Baker. Baker’s lawyer consulted with him and surrendered him to the police. He advised his client not to make a statement. The Assistant District Attorney who examined Baker testified he intended to question Baker anyway. He did so and Baker made a statement. He also made a statement to the police. All this was in the stage of criminal investigation before any judicial proceedings began.
Undoubtedly, police have the right, within reasonable limits, to question an accused after he has consulted counsel and before arraignment. The question then seems to be whether, having advised the client not to make a statement, the lawyer should be able to reiterate this advice if questioning is continued.
Ho one doubts that the client could, nevertheless, as a matter of conscience or policy, not follow the advice and make a statement to police. Thus, where fair opportunity has been given to receive the advice of counsel in close time proximity to questioning and such advice has been given, the real question is the choice of the client to follow it or not follow it. That is a problem very different from the right to counsel.
Hor did the sweater, taken as a by-product to a lawful search for something else, play so important a part in this trial as to require reversal.
*329 The judgments should be affirmed.
Opinion by Judge Keating. All concur except Judge Scileppi who dissents in part and votes to affirm as to all defendants except defendant Baker, and Judge Bergan, who dissents and votes to affirm as to all defendants in a separate opinion in which Judge Jasen concurs and'in which Judge Scileppi concurs in part.
Judgments of conviction reversed, etc.